FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

DEC 08 2014 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MARILENA CORNELIA PAROLISE
and VICTORIA STANA,

                              Plaintiffs,

          v.

AVALONBAY COMMUNITIES, INC.;
TIMOTHY J. NAUGHTON;
RICKEY PIAZZA; MICHAEL FERENBURG;
LAURA COLANTUONI,

                              Defendants.
-----------------------------------------------------------x

Civ._____

# CV 14 7198

**COMPLAINT**

**JURY TRIAL
DEMANDED**

**BIANCO, J.**

**LINDSAY, M.**

Plaintiffs Marilena Cornelia Parolise ("Ms. Parolise") and Victoria Stana

("Mrs. Stana"), hereby engage in this action Pro Se, pursuant to 28 U.S.C. § 1654. Their

Complaint against Defendants AvalonBay Communities, Inc. ("AvalonBay"), Timothy J.

Naughton ("Chairman Naughton"), Rickey Piazza ("Mr. Piazza"), Michael Ferenburg

("Mr. Ferenburg") and Laura Colantuoni ("Ms. Colantuoni"), alleges as follows:

## NATURE OF THE ACTION

1. This civil action is commenced by Ms Parolise and Mrs Stana to enforce the Federal

Fair Housing Act ("FHA"), 42 U.S.C § 3601 *et seq.*, the New York State Human Rights

Law, Executive Law, Article 15, 290 § *et seq.*, and the Nassau County Human Rights

Law § 21-9.0 *et seq.* ( the Nassau County Administrative Code). The Plaintiffs are

seeking to obtain redress for Defendants' repeated refusal to comply with the federal,

state, and local fair housing regulations, and their discriminatory housing practices.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 and §1343, 28 U.S.C. § 2201 and 42 USC § 3613. This Court has supplemental jurisdiction over the New York State and Nassau County law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C.§1391(b), (c) and (d), because Defendant AvalonBay owns ten residential rental real properties in the counties of Nassau and Suffolk only, therefore conducting a substantial amount of its New York State business in this District. Defendant Naughton is the acting Chairman and C.E.O. of AvalonBay, in that capacity maintaining significant business contacts and decision making authority in the District to be subject to the Court's personal jurisdiction with respect to this action. Defendants Piazza, Ferenburg and Colantuoni reside and work in the District. In addition, venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rising to the claims occurred in this District.

## THE PARTIES

4. Marilena Cornelia Parolise is an American woman of Romanian descent who resides in Westbury, NY. Ms Parolise moved into the apartment complex formerly known as Archstone Meadowbrook Crossing Westbury on 10/10/2012 ("Archstone"). The property was sold to AvalonBay during the Spring 2013. AvalonBay is the actual owner/ landlord and the apartment complex is known since the purchase as Avalon

Westbury ("the Premises", "the Property"). Ms Parolise has lived on the Property in the same 1 bedroom/1 bathroom during all relevant times and at the moment of the filing of this complaint continues to reside on the Premises.

5. Victoria Stana is an American woman of Romanian descent and Ms Parolise's mother. She is a 76 years old senior citizen. She has moved into and has been living on the Premises together with Ms Parolise since 10/10/2012. As of the date of the filing of this complaint, Mrs Stana still resides at the same address.

6. AvalonBay Communities, Inc. (AVB - NYSE) is a real estate investment trust ( "REIT") with its headquarters in Arlington, VA. According to their website, the company is "focused on developing, redeveloping, acquiring and managing high-quality apartment communities in high barrier-to-entry markets of the United States... AvalonBay operates in 18 high barrier-to-entry markets characterized by a limited supply of new apartment homes and a high cost of single-family housing, leading to a more favorable demand/supply fundamentals over the long term". (Source: www.avaloncommunities.com ) The property known as Avalon Westbury, located at 1299 Corporate Dr, Westbury, NY, 11590, in Nassau County, is part of AvalonBay's Long Island portfolio of 10 communities/ 2,881 homes. Avalon Westbury is an apartment complex that has 21 buildings and 396 rental units.

7. Mr Timothy J. Naughton is the Chairman of the Board, CEO and President of AvalonBay Communities, Inc. Before considering this civil action, Ms Parolise had tried to enforce her and Mrs Stana's fair housing rights in a letter addressed to him personally on October 5th, 2014 in a last attempt to keep a channel of communication open with AvalonBay. Chairman Naughton did nothing to investigate and address the

situation, showing no empathy towards the Plaintiffs and utter disregard for the fact that under his leadership one of AvalonBay's properties was in non-compliance with federal, state, and local fair housing regulations.

8. During all relevant times, Defendant Rickey Piazza worked as the Senior Community Manager of Avalon Westbury, Defendant Michael Ferenburg was the Customer Service Supervisor/ Assistant Community Manager, and Defendant Laura Colantuoni was a Senior Community Consultant. As part of their responsibilities, they provide information about units for rent to prospective applicants, show apartments, quote rental amounts, negotiate leases/ renewals, and take care of customer service issues involving residents of Avalon Westbury. Mr Piazza, Mr Ferenburg and Ms Colantuoni were at all times acting as employees, agents and/or representatives of Defendant AvalonBay Communities, Inc. Mr Ferenburg left AvalonBay on November 25th, 2014, and is currently Property Manager for The Bozzuto Group, in Hempstead, NY, at their property, Metro 303.

## STATEMENT OF FACTS

9. In August 2012 Ms Parolise visited Archstone Westbury to inquire about the availability and pricing of housing for her mother and herself. Defendant Colantuoni was at the leasing office. She took Ms Parolise on a tour of the Premises and showed her two apartments - a 1bedroom/ 1 bathroom unit and a 2bedroom/ 2 bathroom. During the tour she entertained what appeared to be a regular conversation between a prospective tenant and a leasing agent, asking about Ms Parolise's professional

background, explaining the Property requirements with regards to income and credit

history. She presented Archstone as a luxury living apartment community.

10. She also inquired about Ms Parolise's national origin and about her mother - if she

would be living in the same unit. She quoted the 1bed/1bath at $2,363 a month, and

the 2bed/2bath at $2,760. Ms Parolise asked about the availability of lower priced

apartments and compared the property to the one she was a resident of while she

lived in Florida, which had very similar floor plans and amenities, with prices around

$900 for a one bed/1bath and $1,200 for a 2bed/2bath. Ms Parolise expressed her

surprise with regards to the prices being so high, because the property looked just

about average, far from luxury, as it was being presented. Defendant Colantuoni

acted very surprised to hear about the Florida prices and said "No, this is New York,

those are the prices up here, we are actually a lot cheaper than AvalonBay on

Stewart Avenue, in Garden City". No mention was made about Archstone Westbury

being in fact a mixed income community with an 80/20 Affordable Housing Program,

out of which about 50% are in fact senior units.

11. During the following weeks, Ms Parolise applied online for the 1bed/1bath she was

showed and was instantly approved. She was charged $100 per person in

application fees and $500 in amenities fees, for a total of $700. Defendant

Colantuoni contacted her a few days later, claiming that the unit was in fact

unavailable because the tenant was holding over and offered to show another unit in

a different building. She showed Ms Parolise unit 1812 in building 18, a 1bed/1bath,

that she quoted at $2,460. She also said unit 1810 would become available around

the same date but couldn't be shown, because it was occupied, and quoted it at $2,363.

12. Ms Parolise expressed doubts about the prices quoted. She told Defendant Colantuoni about a review of the Property she had stumbled into online: the author was sharing his frustration of having been charged full market price during his tenancy because the apartment complex was being marketed as luxury living, when in reality it accepted a large amount of Section 8 residents and was very poorly maintained. She wanted to wait and look around more. Defendant Colantuoni denied the allegations as completely untrue, and said that the $700 paid during the application process would be non-refundable, should Ms Parolise decide not to rent. Should she decide to move into either of the units shown, she wouldn't be charged a deposit.

13. Based on the information given to her by Defendant Colantuoni, Mrs Stana and Ms Parolise agreed to enter into a 12 months lease with Archstone Westbury for unit 1810, at the rate of $2,363 per month, starting 10/10/2012.

14. The initial lease was executed between Ms Parolise and Defendant Ferenburg, acting as the Assistant Community Manager, on 10/10/2012, the actual move-in date. While signing the lease, Ms Parolise noticed a paragraph that concerned Section 8 residents. She also saw on Mr Ferenburg's desk another lease agreement for a different unit, at a lower price, $2,100. When she asked Defendant Ferenburg if he could still move her into a more affordable unit, he took the lease in question and tossed it into a drawer, saying that "nothing else was available at the moment" and that the price of her move-in was firm.

15. During their first year of tenancy with Archstone Westbury, Mrs Stana and Ms Parolise did find out from neighbors that the Property was in fact a mixed income community. Ms Parolise inquired several times at the leasing office about the availability of affordable housing. She was always denied access to the Property Manager, Mr Rickey Piazza, and was always told that the only one to discuss the matter with was Defendant Ferenburg, who continued to deny the possibility of cheaper alternatives and refused to admit the existence of senior units on the Property.

16. During the Spring of 2013 Archstone Westbury was bought by AvalonBay Communities, Inc., becoming Avalon Westbury.

17. In July 2013, Defendant Ferenburg and AvalonBay extended a lease renewal offer to Ms Parolise and Mrs Stana for unit 1810 at the price of $2,460 per month for a 12 months lease. Ms Parolise went to the leasing office several times in an attempt to renegotiate the price. She was told that the only one to talk to was Mr Ferenburg. When Ms Parolise brought up the existence of affordable units and asked him about the qualification process, he said that it was true that AvalonBay Westbury had low income housing, however, it was "less then 1%, and believe me, I know, I am the one who gets their checks; everybody else pays more rent than you do". He also claimed that as part of the transition process AvalonBay was trying to "get rid of those units" and to align the prices with the property they owned on Stewart Avenue, in Garden City, which was more expensive. He claimed that the price increase they wanted for unit 1810 was "only 4%, which is the norm". He said that "the price was firm, even if he wanted to he couldn't change it, his computer wouldn't allow it".

18. After several failed attempts to renegotiate and after repeatedly being denied the opportunity to apply for an affordable unit, Ms Parolise told Defendant Ferenburg that she would give him the required 60 days notice for unit 1810 and wait for another apartment to become available, at a lower market price. He stated that he couldn't move Ms Parolise and her mother in any other unit, since it was the "busy season" and nothing else was available, or would become available during the next two months. He also said that if Ms Parolise wanted to give a move out notice, it was at her own risk, because more than likely she would lose her apartment and would then have to move out or get evicted.

19. Ms Parolise and Mrs Stana, coerced by the circumstances created by the leasing office and Defendant Ferenburg, entered into a new 12 months lease agreement with AvalonBay, at the price of $2,460 per month, for the same unit, 1810.

20. At the beginning of December 2013 Ms Parolise lost her job. After unsuccessfully trying to secure employment and without other source of income, at the end of January, 2014, Ms Parolise applied for Public Assistance benefits. As part of the initial application package, the Department of Social Services of Nassau County ("DSS") asked for a written statement from the landlord/owner AvalonBay. The statement itemized all of Ms Parolise's housing expenses, utilities, listed her mother as a co-tenant, and also inquired if there was any employment opportunity available that Ms Parolise could perform for the landlord in exchange for reduced rent.

21. Ms Parolise asked Defendant Ferenburg to complete the DSS paperwork. Initially, he declined, saying that he wasn't sure he could do it, he had to ask for advice from Defendant Piazza, the Property Manager. Eventually, Mr Ferenburg signed the

paperwork. He declared that there was no job available that Ms Parolise could've
been considered for in exchange for a lower rent, without inquiring about her
background or asking for a resume.

22. Starting February 2014, Ms Parolise and Mrs Stana tried to renegotiate their living
situation several times, based on a clause in the lease that would've allowed them
to ask for a transfer to a different unit or to another apartment complex, as long as
they were not in default. Defendant Ferenburg blocked all of their attempts. He
claimed that no other unit was available for them to move into. Ms Parolise asked to
complete a transfer request form. Defendant Ferenburg claimed that was
unnecessary, since nothing else was available, he promised he would let the
Plaintiffs know if anything changed. He never followed up on his promise.

23. In March 2014, the Plaintiffs were unable to make the rent payment on time, and
despite Ms Parolise calling AvalonBay's Customer Service in Arlington, VA, to let
them know that she would be paying, but late, they were served with a 3 day Notice
to Quit. The Plaintiffs immediately paid in full, including a late fee of $75, bringing
the account up to date.

24. In April 2014, with the rent becoming an immense burden, Ms Parolise inquired with
the leasing office about breaking the lease. Defendant Ferenburg told the Plaintiffs
AvalonBay would charge them in full for the remaining of the time of the contract,
until 10/9/2014, if they were to vacate without finishing the lease. He continued to
claim that no other unit was available for the Plaintiffs to move into, although he was
aware that the Plaintiffs were struggling to keep up with their obligations.

25. Also in April 2014, Ms Parolise had to file a recertification package with DSS Nassau for Public Assistance benefits. Defendant Colantuoni signed the landlord/owner part of the paperwork. She stated that no job was available for Ms Parolise to perform in exchange for a lower rent, without inquiring about her background or asking for a resume. She also told Ms Parolise to "talk to Michael" (Ferenburg) about the availability of other housing options, because he was "the only one to talk to".

26. In May 2014 the living situation of the Plaintiffs became so unsustainable and so stressful that they decided to break the lease, regardless of the consequences, so they started looking for another place to live. They decided to relocate to TampaBay, FL, an area Ms Parolise lived in previously, were the cost of living is a lot cheaper, so it would've allowed the Plaintiffs to recover financially. Ms Parolise also started to consider personal bankruptcy.

27. They got in touch with Westshore Apartments in Tampa, FL, and went through the application process. They got declined based on information supplied by the leasing office at Avalon Westbury, according to the leasing agent who processed the application, James Youry. The reason for denial was that the rental history of the Plaintiffs "was not up to standards". Note: the Plaintiffs' rental history at that point was spotless, other than the fact that by now they were seriously struggling to make payments to AvalonBay and they were still under contract. However, no money was owed to Avalon Westbury at that point to justify supplying derogatory information to a prospective landlord.

28. In June 2014 the Plaintiffs had no other option than to default on their lease with AvalonBay, while frantically looking for another living arrangement. All their efforts to

work things out were encountered with resistance and a complete lack of goodwill. As a consequence, at the end of June 2014 AvalonBay filed a summary proceeding for non-payment against the Plaintiffs in Nassau County District Court, claiming one month in unpaid rent, plus a late fee, plus an eviction fee.

29. Ms Parolise and Mrs Stana started going to Court hoping they could renegotiate their situation through AvalonBay's attorney, Mr Michael N. McCarthy. Unable to afford private counsel, the Plaintiffs signed up for the services of the Nassau/Suffolk Legal Services, a pro bono organization coordinated by attorney Roberta D Scoll.

30. The case was adjourned twice and then dismissed because of Mr McCarthy's failure to appear. AvalonBay filed a second summary proceeding at the end of July, charging the Plaintiffs a second eviction fee, despite the fact that the dismissal was only their attorney's fault.

31. A few more adjournments later, attorney McCarthy finally showed up for the court date and demanded that all the rent arrears ( by now 3 months plus inflated fees) be cured in a lump sum payment or the Plaintiffs should get evicted with no stay. Attorney Roberta D. Scoll did the best she could to get AvalonBay and Mr McCarthy what they wanted. She proclaimed that Mrs Stana, a 76 years old senior citizen, didn't matter in the equation, because she was not a US citizen and didn't speak enough English to not waste Mrs Scoll's time. So she proceeded to try to intimidate Ms Parolise into entering into a written agreement with AvalonBay on their full terms.

32. Ms Parolise resisted Mrs Scoll and refused to sign the agreement. Ms Parolise also tried to explain the mixed income situation at Avalon Westbury and how she was repeatedly blocked from applying, in violation of the Fair Housing regulations. After

Mrs Scoll and Mr McCarthy debated on the situation out of the Plaintiffs sight, Mrs Scoll claimed there was nothing she could do to alleviate the situation because Mr McCarthy "wouldn't budge", that she didn't see any discrimination, and threatened Ms Parolise to drop her case if she didn't sign the agreement with AvalonBay. Following Ms Parolise's repeated refusal to sign, Mrs Scoll lost her temper and called Ms Parolise "a Hispanic on welfare who didn't want to help herself" and who would "end running around all the churches on Long Island asking for a place to stay".  Note: the Plaintiffs are of Romanian descent.

33. Since no agreement was reached a trial date was set for September 16th, 2014.

34. The Plaintiffs went back home in tears and humiliated beyond belief. After assessing the  situation they felt that they couldn't get a fair trial in District Court and that they were trapped in a very hostile environment. After very careful consideration, the Plaintiffs both filed for bankruptcy protection on September 15th, 2014, in Eastern District of New York.

35. As a result of the bankruptcy filing, AvalonBay's aggressive court action was stayed.

36. On October 5, 2014, Ms Parolise wrote an email to Defendant Rickey Piazza, the Property Manager at Avalon Westbury, expressing her frustration and attempting to enforce what she considered to be the Plaintiffs' Fair Housing rights. Defendant Piazza refused to discuss the situation. Ms Parolise followed up with a complaint email to AvalonBay's Customer Service in Arlington, VA. Nobody reached out to the Plaintiffs. Ms Parolise also sent a written grievance to Chairman Naughton, AvalonBay's CEO, together with a copy of the email that was sent to Defendant Piazza.

37. On October 9, 2014, the last day of the Plaintiffs' 12 months lease with AvalonBay, Defendant Piazza sent the Plaintiffs an email asking them to vacate the Premises as of the same day, claiming that notice was properly given to their attorney at the last court appearance, and threatening to start a holdover proceeding if they didn't comply.

38. Ms Parolise answered back through email that there was no such notice given, that Defendant Piazza's action was in violation of the bankruptcy stay, and that she also considered it to be in retaliation for Ms Parolise's housing discrimination complaint.

39. On October 10, 2014, AvalonBay sent Ms Parolise a cease and desist letter through their attorney, Mr McCarthy, as a response to the grievance she sent Chairman Naughton, asking her to refrain from communicating with AvalonBay other than through his office.

40. Also on October 10, 2014, Mr McCarthy filed a Notice of Presentment with the Bankruptcy Court in an effort to have the stay lifted, so AvalonBay can proceed with a holdover eviction in Nassau County District Court and to recover money damages from the Plaintiffs.

41. As of the date of the filing of this civil action there is a hearing scheduled by the Bankruptcy Court on December 18, 2014, to decide if AvalonBay's petition to lift the stay should be granted or not.

42. Also as of the date of the filing of this civil action, AvalonBay continues to charge the Plaintiffs as month-to-month tenants, at the price of $3,915 per month, plus legal fees. ( Defendant Ferenburg extended a written lease renewal offer to the Plaintiffs in July 2014, at $2,750 per month for a 12 months lease. The Plaintiffs didn't

13

answer, considering the fact that they were in the middle of an eviction action and that the price asked was excessive. Defendant Ferenburg followed up with an email demanding that the Plaintiffs sign a new lease before October 1st, 2014, or continue to be charged at the month-to-month rate, at AvalonBay's discretion after the lease' end. He also finally admitted that Avalon Westbury had senior units as part of their affordable housing program and asked Mrs Stana to get on the waiting list.)

43. Following his exceptional performance as an Assistant Community Manager at Avalon Westbury, Defendant Ferenburg left AvalonBay on November 25, 2014, to take a Property Manager position with the Bozzuto Group, at their new property Metro 303, in Hempstead, NY.

44. The Plaintiffs continue to live on the Premises, unable to secure suitable housing at this point.

45. Ms Parolise is still unemployed and her chances of finding a decent job given the state of her credit and rental situation are null.

## AVALONBAY AND AFFORDABLE HOUSING

46. Despite the luxury living, high end image they are marketing, AvalonBay Westbury is in fact a mixed income community.

47. In July 2014 the resident of unit 1805 in the Plaintiffs' building, on second floor, passed. The Plaintiffs met her two daughters a few weeks later, while they were cleaning the apartment so they can surrender possession to the leasing office. The daughters told Ms Parolise that the unit was a qualified senior unit, that their mother

paid $960 per month until 2013 when AvalonBay bought the Property and $1,200

after that. 1805 is a 2 bed/2bath. They advised Ms Parolise to talk to the leasing

office and file a senior unit application on behalf of her mother. Ms Parolise emailed

Defendant Ferenburg and inquired about it. He replied that they did in fact have

senior units and sent a form for Mrs Stana to complete and send back to the leasing

office, so she can be put on a waiting list. It was the first time Defendant Ferenburg

admitted the existence of an Affordable Housing Program at AvalonBay. He claimed

that 1805 was not available though, Mrs Stana would have to get on the waiting list

and it could take years.

48. Mrs Stana mailed the application for a senior unit back to the leasing office right

away. She never heard back from the leasing office, no number on the waiting list

was assigned, no further information was given.

49. As of the date of the filing of this civil complaint, unit 1805 is still unoccupied,

although the leasing office continues to claim that it is unavailable.

50. According to Defendant Ferenburg's LinkedIn profile, he was the one in charge of

the program during all relevant times. One of his duties was to "proficiently

administer 80/20 Affordable Housing program, from annual physical inspections

through recertification and renewal processes".

51. Affordable Housing is available in other AvalonBay communities on Long Island. At

Avalon Court and Avalon Court North in Melville, NY, in the Town of Huntington, the

program is administered by The Long Island Housing Partnership, Inc. The Plaintiffs

found out about it on their own, in Spring 2014, and filed an intake form. They were

initially ranked #342 on the wait list. In October 2014 they were ranked #163, after

the wait list was re-numbered as part of the annual maintenance to reflect persons

removed from the list. Prices for 1bed/1bath start at $902 and for 2 bed/2bath at

$1,080 per month for the year August 2014 - August 2015.

52. Unit 1812 is a 1bed/bath located on the same floor as the Plaintiffs' unit. It was used

as a short term rental during all relevant time. The actual tenant moved into the unit

in August 2014 and is supposed to vacate in December 2014. He pays Avalon

Westbury $1,203.80 per month. The same unit was offered to the Plaintiffs for

$2,460 a month back in 2012 for a 12 months lease. The Plaintiffs are being

charged a month-to-month rate of $3,915 per month (it would be $3,605 for a 5

months lease, according to the lease renewal offer sent by Defendant Ferenburg).


## INJURY TO PLAINTIFFS


53. During all times relevant to this complaint the Plaintiffs were provided untruthful

information by Defendants about apartments available for inspection or rent based

on sex, national origin, age and source of income, in violation of local, state and

federal fair housing laws.

54. Defendants lied about the availability of housing, quoted the Plaintiffs a higher rent,

and refused to negotiate although cheaper alternatives were available. Defendants

lied about the existence of the Affordable Housing program, denied the Plaintiffs an

equal opportunity access to information and to the application process.

55. The Customer Service in Arlington, VA, although they told Ms Parolise that they

would forward her housing complaint through their corporate channels didn't act on

it. They also refused to disclose who the Regional Manager on Long Island was, so Ms Parolise can attempt to communicate the issue to higher up.

56. Chairman Naughton, although the leader of AvalonBay, a public company who claims they put a lot of efforts in complying with the Fair Housing laws, did nothing to investigate Ms Parolise's grievance. He treated a very serious situation with disdain, showed disregard for the law and disrespect for the Plaintiffs.

57. As a result of the illegal and discriminatory actions described above, Defendants have directly and substantially injured the Plaintiffs, by denying them equal opportunity access to housing based on sex, national origin, age and source of income.

58. The Plaintiffs were injured because they had to divert very scarce resources, including time, to identify and counteract Defendants unlawful housing practices. Those resources could've been used to conduct a regular job search, community service, and other productive activity, instead of countering Defendants' discriminatory conduct.

59. The Plaintiffs were subject to prejudice, isolation and extremely aggressive collection practices by the Defendants. They were constantly charged excessive late and legal fees. They were billed predatory prices. They were denied all dialogue. They were unable to secure suitable replacement housing because derogatory information has been given to a prospective landlord when there was no reason to do so. They were retaliated against for filing a complaint and trying to enforce their rights.

60. Defendants' used their power and influence to intimidate, threaten and harass the Plaintiffs in District Court, ultimately pushing them into asking for bankruptcy protection, because they felt cornered and they couldn't find relief anywhere else than in Bankruptcy Court.

61. By reason of the foregoing, Plaintiffs Stana and Parolise have suffered a loss of civil rights and other damages, including emotional distress, humiliation, embarrassment, and deterioration of their physical and mental health as a result of excessive stress.

## FIRST CAUSE OF ACTION
### Fair Housing Act - § 3604(d)

62. Avalon Westbury and the residential apartments contained within the buildings are "dwellings" as defined by the Fair Housing Act to include "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families". 42 U.S.C. § 3602(b).

63. Defendants' conduct, as described above, constitutes representations made because of sex and national origin that a dwelling is not available for inspection or rent when such dwelling was in fact so available, in violation of the Fair Housing Act, 42 U.S.C. § 3604(d). This provision includes "limiting information, by word or conduct, regarding suitably priced dwellings available for inspection, sale or rental" because of sex and national origin. 24 C.F.R. Part 100.80(b)(4)

64. Defendants' conduct, as described above, was intentional, willful, and made in disregard for the rights of others.

18

65. Plaintiffs are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices. 42 U.S.C. § 3602(i).

66. Pursuant to 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Fair Housing Act - § 3604(b)

67. Avalon Westbury and the residential apartments contained within the building are "dwellings"as defined by the Fair Housing Act to include "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as a residence by one or more families". 42 U.S.C. § 3602 (b).

68. Defendants' conduct, as described above, constitutes discrimination against any person in the terms, conditions, or privileges of rental of a dwelling because of sex and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

69. Defendants' conduct as described above was intentional, willful, and made in disregard for the rights of others.

70. Plaintiffs are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices. 42 U.S.C. § 3602(i).

71. Pursuant to 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Nassau County Human Rights Law - § 21-9.7(c)(1)

72. Defendant AvalonBay Communities, Inc. is the owner and lessor of Avalon Westbury, a "housing accommodation" as defined by § 21-9.7(b)(5) of the Nassau County Administrative Code to include "a building...designed to be used or occupied as the home, residence or sleeping place of one or more human beings..."

73. Defendants Naughton, Piazza, Ferenburg and Colantuoni are "agents" of AvalonBay as defined by § 21-9.7(b)(5) of the Nassau County Administrative Code to include "a person with the authority to engage, on behalf of another, in any act associated with the...rental, or occupancy of one or more housing accommodations."

74. Defendants' conduct as described above constitutes an unlawful discriminatory practice to otherwise withhold a housing accommodation because of "actual or perceived differences" of gender, age, source of income, ethnicity or national origin, in violation of § 21-9.7(c)(1) of the Nassau County Administrative Code.

75. Defendants' conduct as described above was intentional, willful, and made in disregard for the rights of others.

76. Plaintiffs have suffered damages as a result of Defendants' conduct described above.

77. Pursuant to §21-9.7(d)(3) of the Nassau County Administrative Code, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

78. Plaintiffs have served a copy of this Complaint upon the County Attorney, pursuant to §21-9.7(d)(3) of the Nassau County Administrative Code.

## FOURTH CAUSE OF ACTION

### Nassau County Human Rights Law - §21-9.7(c)(1)

79. Defendant AvalonBay Communities, Inc. is the owner and lessor of Avalon Westbury, a "housing accommodation" as defined by § 21-9.7(b)(5) of the Nassau County Administrative Code to include "a building...designed to be used or occupied as the home, residence or sleeping place of one or more human being being..."

80. Defendants Naughton, Piazza, Ferenburg and Colantuoni are AvalonBay's "agents" as defined by § 21-9.7(b)(5) of the Nassau County Administrative Code to include "a person with the authority to engage, on behalf of another, in any act associated with the...rental, or occupancy of one or more housing accommodations."

81. Defendants' conduct as described above constitutes discrimination in the terms, conditions, or privileges of the rental of a housing accommodation because of gender, age, source of income, ethnicity or national origin, in violation of the Nassau County Administrative Code § 21-9.7(c)(1).

82. Defendants' conduct as described above was intentional, willful, and made in disregard for the rights of others.

83. Plaintiffs have suffered damages as a result of Defendants' conduct described above.

84. Pursuant to § 21-9.7(d)(3) of the Nassau County Administrative Code, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

85. Plaintiffs have served a copy of this Complaint upon the County Attorney, pursuant to § 21-9.7(d)(3) of the Nassau County Administrative Code.

## FIFTH CAUSE OF ACTION

### N.Y. Executive Law, Article 15, Human Rights Law § 296(5)(a)(1)

86. Defendant AvalonBay Communities, Inc. is the owner and lessor of AvalonBay Westbury, a "housing accommodation" as defined by § 292(10) of the N.Y. Executive Law, Article 15, Human Rights Law, as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings".

87. Defendants Naughton, Piazza, Ferenburg and Colantuoni are agents or "real estate brokers", defined by § 292(14) of the N.Y. Executive Law, Article 15, Human Rights Law as "any person, firm or corporation who, for another and for a fee, commission or other valuable consideration,..., exchanges, buys or rents, or offers or attempts to negotiate a sale, at auction or otherwise, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate".

88. Defendants' conduct as described above constitutes an unlawful discriminatory practice to otherwise refuse to rent, lease or deny to or withhold from any person

such a housing accommodation because of the national origin, sex, or age of such person, or to represent that any housing accommodation is not available for inspection, rental or lease when in fact it is so available, in violation of § 296(5)(a)(1) of the N.Y. Executive Law, Article 15, Human Rights Law.

89. Defendants conduct as described above was intentional, willful, and made in disregard for the rights of others.

90. Plaintiffs have suffered damages as a result of Defendants' conduct described above.

91. Pursuant to § 297(6)(9)(10) of the N.Y. Executive Law, Article 15, Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

92. Plaintiffs have served a copy of this Complaint upon the Commissioner of the Division of Human Rights, pursuant to § 297 of the N.Y. Executive Law, Article 15, Human Rights Law.

## SIXTH CAUSE OF ACTION

### N.Y. Executive Law, Article 15, Human Rights Law § 296(5)(a)(2)

93. Defendant AvalonBay Communities, Inc. is the owner and lessor of AvalonBay Westbury, a "housing accommodation" as defined by § 292(10) of the N.Y. Executive Law, Article 15, Human Rights Law, as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings".

23

94. Defendants Naughton, Piazza, Ferenburg and Colantuoni are agents or "real estate brokers", defined by § 292(14) of the N.Y. Executive Law, Article 15, Human Rights Law as "any person, firm or corporation who, for another and for a fee, commission or other valuable consideration,..., exchanges, buys or rents, or offers or attempts to negotiate a sale, at auction or otherwise, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate".

95. Pursuant to § 296 (5)(a)(2) of the N.Y. Executive Law, Article 15, Human Rights Law, it shall be an unlawful discriminatory practice to discriminate against any person because of national origin, sex, or age in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the services in connection therewith.

96. Defendants conduct as described above was intentional, willful, and made in disregard for the rights of others.

97. Plaintiffs have suffered damages as a result of Defendants' conduct described above.

98. Pursuant to § 297(6)(9)(10) of the N.Y. Executive Law, Article 15, Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

99. Plaintiffs have served a copy of this Complaint upon the Commissioner of the Division of Human Rights, pursuant to § 297 of the N.Y. Executive Law, Article 15, Human Rights Law.

## PRAYER FOR RELIEF

100. **WHEREFORE,** Plaintiffs respectfully request judgement against Defendants as follows:

(a) Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C § 3601 *et seq.*, the New York State Human Rights Law, Executive Law, Article 15, 290 § *et seq.*, and the Nassau County Human Rights Law § 21-9.0 *et seq.* ( the Nassau County Administrative Code).

(b) Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from/ to:

I.    withholding housing, or otherwise making housing unavailable on the basis of sex, national origin, age and source of income;

II.   representing to any person that a dwelling is not available for inspection or rental when such a dwelling is in fact so available because of sex, national origin, age and source of income;

III.  discriminating in the terms, conditions, or privileges of rental housing because of sex, national origin, age and source of income;

IV.  coercing, intimidating, threatening, retaliating, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act;

V.   aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by the Nassau County Human Rights Law and by the New York State Human Rights Law;

VI.   make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

VII.  train all management, agents, and employees on fair housing laws;

VIII. advertise apartments available for rent in a non-discriminatory manner;

IX.   allow monitoring of their application and rental process;

X.    retain advertising and rental records to allow for appropriate monitoring;

XI.   develop written procedures on rental process and fair housing policy to be distributed to all employees, agents, tenants, and rental applicants;

XII.  establish a system for testing agents and employees for unlawful discriminatory practices;

XIII. properly disclose at the time of the rental the availability of the Affordable Housing Program and make available printed materials explaining the application process, qualification requirements and prices;

XIV. truthfully advertise their Properties as mixed income communities, and not as luxury living;

(c) Awarding such damages to Plaintiffs Stana and Parolise as will fully compensate for the diversion of resources and the loss of credit caused by Defendants' unlawful practices;

(d) Awarding such damages to Plaintiffs Stana and Parolise as will fully compensate for any loss of rights, as well as for the humiliation, embarrassment, emotional distress, and deterioration of their physical and mental health as a result of excessive stress suffered due to Defendants' discriminatory conduct;

(e)Awarding punitive damages to Plaintiffs against Defendant AvalonBay Communities, Inc.;

(f) Awarding punitive damages to Plaintiffs against Defendants Timothy J. Naughton, Rickey Piazza, Michael Ferenburg and Laura Colantuoni individually as to deter others from engaging in similar misbehavior in the future;

(f) Awarding Plaintiffs reasonable attorneys' fees, costs and expenses incurred in prosecuting this action;

(g)Granting Plaintiffs such other further relief as may be just and proper.

Dated: December 8th, 2014

Westbury, NY                    By: _____

                                Marilena Cornelia Parolise

                                _____

                                Victoria Stana

                                1299 Corporate Dr Apt 1810

                                Westbury, NY 11590

                                Phone: (917)257-6464

                                *Plaintiffs*

**Parties can be reached at:**

1. Plaintiffs Marilena Cornelia Parolise and Victoria Stana reside at: 1299 Corporate Dr Apt 1810, Westbury, NY 11590. Phone # (917) 257-6464.

2. Defendant AvalonBay Communities, Inc. has its headquarters at: 671 N. Glebe Road Suite 800, Arlington, VA 22203. Phone: (703) 329 -6300.

3. Defendant Timothy J. Naughton, Chairman and CEO of AvalonBay Communities, Inc. works at : 671 N. Glebe Road, Suite 800, Arlington, VA 22203. Phone: (703)329-6300.

4. Defendant Rickey Piazza, Property Manager, Avalon Westbury, works at: 1299 Corporate Dr, Westbury, NY 11590. Phone: (516)222-2244.

5. Defendant Laura Colantuoni, Senior Community Consultant, Avalon Westbury, works at: 1299 Corporate Dr, Westbury, NY 11590. Phone: (516)222-2244.

6. Defendant Michael Ferenburg, Former Customer Service Supervisor for Avalon Westbury, is Property Manager at The Bozzuto Group/ Metro 303, and works at: 303 Main Street, Hempstead, NY 11550. Phone: (516)486-7700.